### Jordan and another *against* Gallup.

An officer having taken property on legal process, must, in his subsequent proceedings with it, comply with all the requirements of the law, or show some legal excuse for not doing so ; and if he does not, he becomes liable, not only to those on whose behalf he acts, but also to the owner, and those claiming under him and standing in his situation.

Where personal property on which an execution had been levied, was advertised to be sold, and was sold, not at the sign-post in the society wherein it was taken, but in another place where it was deposited, when the execution was levied upon it ; and the only reason for this proceeding was, that the property could not be conveniently removed from that place to such sign-post ; the court, without explicitly deciding the point, were strongly inclined to the opinion, that this was not a sufficient excuse for not selling the property at the sign-post.

Personal property was attached, by the same officer, first, in sundry suits in favour of *A,* and afterwards, in a suit in favour of *B,* all against *C.* This property the officer delivered to *D,* who gave a written receipt therefor, promising to re-deliver it, on demand. With the executions issued in the suits first served, the officer afterwards demanded such property of *D,* who neglected to re-deliver it, but paid the value thereof to the officer, who applied the sum so paid in part payment of such executions, it being insufficient to satisfy the full amount. *B* having obtained an execution in his suit, and having in vain demanded the property of the officer, brought an action against him for negligence, who set up these facts as a defence. Held, 1. that *B,* by virtue of his attachment, had a right to have the property kept by the officer, and appropriated, in the manner prescribed by law, in satisfaction of the prior liens, and if not so appropriated, it was exonerated from those liens ; 2. that the delivery of the property to *D,* the receipter, the taking from him a promise in writing for its re-delivery on demand, his neglect to re-deliver it, when demanded, his subsequent payment of the full value of the property, and the

application of the money, by the officer, on the executions in favour of *A*, did not excuse the officer for not having the property forthcoming to be taken on *B*'s execution ; 3. that the rule of damages, in a case like this, is the injury sustained by the creditor, by the default of the officer, and therefore *B*, not having sustained any actual damage, by the negligence complained of, was entitled to recover nominal damages only ; 4. that it is a good defence to such an action, that the property attached belonged not to the debtor, but to another person ; 5. that where the defence set up to such action, is, that the property has been appropriated, in the manner prescribed by law, in satisfaction of the prior liens, a general averment of that import is not sufficient, but the plea must state specifically the facts showing this result.

*Windham,*
July, 1844.

Jordan
*v.*
Gallup.

THIS was an action on the case against the defendant, as sheriff of *Windham* county, for the default of *Franklin Bailey*, one of his deputies.

The declaration alleged, that on the 21st of *January*, 1841, the plaintiffs prayed out a writ of attachment in an action of book debt in their favour against *Elisha A. Smith*, which they delivered to *Bailey*, requiring him to serve and return it ; that by virtue of such writ, he attached of the goods and effects of *Smith*, the following articles, [specifying them,]—that the writ being returned to the court to which it was returnable, the plaintiffs, in *October*, 1841, recovered judgment against *Smith*, for 118 dollars, 69 cents, debt, and 25 dollars, 25 cents, costs of suit ; that an execution, issued on this judgment, was, on the 13th of *October*, 1841, put into the hands of *Paraclete Skinner*, another of the defendant's deputies, to be executed ; that this officer made demand of the debtor and searched for his property, but not obtaining payment of the execution, or finding property on which it could be levied, he afterwards, within the life of the execution, and while the lien of attachment continued, made demand of *Bailey* for the goods by him attached, that the execution might be levied thereon, but he did not show them, nor could *Skinner*, by diligent search throughout his precincts, find them, nor any other goods of *Smith*, wherewith to satisfy the execution ; and that he returned it to the clerk of the court from which it issued, wholly unsatisfied. The declaration then averred, that *Bailey* did not, as he was by law bound to do, retain the goods so by him attached, that they might be had upon the execution, but so carelessly conducted himself in respect to them, that they were wholly lost to the plaintiffs ; nor could they, in any way, cause them to be applied in or towards the payment of their

execution, although they were abundantly sufficient therefor; that since the rendition of said judgment, *Smith* has at all times been, and still is, wholly insolvent; nor hath said judgment been, in any way, satisfied; nor can it be satisfied, except from the property so attached.

To this declaration the defendant pleaded, 1st, That previous to the delivery of the plaintiffs' writ to *Bailey* for service, *John F. Pond & Co.* had prayed out five writs of attachment in their favour against said *Elisha A. Smith*, which were in all respects perfected according to law, dated the 21st day of *January*, 1841; that by virtue thereof, said *Bailey*, on the day of the date thereof, attached all the goods and chattels named in the plaintiffs' declaration; and said *Bailey*, having afterwards received the writ of the plaintiffs, thereupon returned the goods so attached on that writ, as attached subject to the attachments in favour of *J. F. Pond & Co.;* that said writs in favour of *J. F. Pond & Co.* were returned to the county court to which they were returnable, and the plaintiffs in said suits recovered judgments in their favour, in one suit for the sum of 283 dollars, 89 cents, damages, and for 15 dollars, 2 cents, costs of suit; in another, for the sum of 381 dollars, 77 cents, damages, and 16 dollars, 9 cents, costs; in another, for the sum of 918 dollars, 40 cents, damages, and 15 dollars, 2 cents, costs; in another, for the sum of 734 dollars, 39 cents, damages, and 15 dollars, 2 cents, costs; in another, for the sum of 934 dollars, 12 cents, damages, and 15 dollars, 2 cents, costs; that for these sums *J. F. Pond & Co.* took out five several writs of execution in their favour, dated the 4th of *March*, 1841, which, on the day of the date thereof, they placed in the hands of *Bailey*, as deputy sheriff, to be executed and returned according to law; that with these executions, *Bailey*, on the 8th of *March*, 1841, made diligent search throughout his precincts for *Smith*, the debtor, to make demand of him of the several sums due thereon, but could not find him; that *Bailey* afterwards, at *Thompson*, levied the execution for the sum of 283 dollars, 90 cents, damages, and 15 dollars, 2 cents, costs, on a part of the goods described in the plaintiffs' declaration, and took them into his possession, posted them on the sign-post in the society in *Thompson* wherein they were taken, and set up a notice that they would be sold at the factory building in *New-Boston*

village in *Thompson*, where they were deposited, and from whence they could not be conveniently removed, specifying the day and hour when the sale would take place ; that at said place and at the time specified, *Bailey* sold said property, at public vendue, to the highest bidder, as follows, [specifying the articles and purchasers,] the amount of such sales being 45 dollars, 51 cents : that on said 8th of *March*, 1841, *Bailey* also made demand of *Israel Saunders*, with said writs of execution in favour of *J. F. Pond & Co.*, and the receipt of *Saunders* given for a part of the property attached, valued in the receipt at the sum of 1039 dollars, 51 cents, and in fact of that value, and no more ; that on such demand, *Saunders* wholly neglected and refused to deliver up the property by him receipted, but on the day of such demand, he paid to *Bailey* the sum of 1039 dollars, 51 cents, in full satisfaction and discharge of said receipt ; that *Bailey* received this sum of money from *Saunders*, and applied the sum of 954 dollars, 57 cents, in full satisfaction of one of the executions in favour of *J. F. Pond & Co.*, and the balance, together with the amount of said sales, on the other execution above specified ; that in the receipt of *Saunders*, it was stipulated by him, in consideration of the delivery of said property to him, that he would deliver it up to *Bailey*, on demand, in like good order and condition, or, in default, would pay the value thereof ; that the goods so receipted by *Saunders*, included all the goods attached by *Bailey* on said writs in favour of *J. F. Pond & Co.*, and on the plaintiffs' writ, and all the goods mentioned in the plaintiffs' declaration, except those sold as aforesaid, and those specified in a receipt given by *William B. Mann ;* that the goods last referred to, [described in the plea,] were delivered to said *Mann*, on the 29th of *January*, 1841, who, on that day, gave to *Bailey* a receipt similar in its terms and import, *mutatis mutandis*, to the aforesaid receipt of *Saunders*, which goods were valued in such receipt at 1140 dollars, and were of that value, and no more ; that with this receipt, and the several executions in favour of *J. F. Pond & Co.*, *Bailey*, on the 29th of *March*, 1841, demanded said goods of *Mann*, who refused and neglected to deliver them, or to pay the value thereof ; that *Bailey*, therefore, returned the executions in favour of *J. F. Pond & Co.* to the clerk of the court from which they issued, satisfied only as

*Windham,*
*July, 1844.*

*Jordan*
*v.*
*Gallup.*

aforesaid ; and that the property so sold at the post, that so receipted by *Saunders*, and that so receipted by *Mann*, comprise all the goods or estate attached by *Bailey*, as alleged in the plaintiffs' declaration. (*a*)

In the second plea, it was averred, that at the time of the attachment of said property, by *J. F. Pond & Co.* and by the plaintiffs, the property receipted by said *Mann*, as aforesaid, and consisting of, [specifying the articles,] was the property of *Israel Saunders*, and not the property of said *Smith*, as whose property it was attached ; and that all the residue of said property so attached, has been applied in payment of said executions in favour of *J. F. Pond & Co.*, who had a prior lien thereon ; and that said property was insufficient to satisfy said executions.

The allegations in these pleas, except as to the issuing and service of the attachments and the rendering of the judgments therein mentioned, were traversed by the plaintiffs ; upon which issue was joined.

After a trial on this issue, before the superior court, at *Brooklyn,* term, 1843, the jury returned a verdict for the defendants. The plaintiffs thereupon moved for judgment in their favour *veredicto non obstante.* The questions arising on such motion were reserved for the advice of this court.

*Strong*, in support of the motion, remarked *in limine*, that the power of taking property by attachment, before any just debt or claim had been established, was an extraordinary power, given by statute, against common right, the exercise of which could be justified only where there was a strict compliance with the provisions of the statute. Where property is so taken, the officer is bound to have it forthcoming, but for some excuse which the law deems sufficient. The counsel then contended, 1. That in this case, the record disclosed no such excuse for the officer's negligence.

In the first place, he claims, that a part of the property attached, was sold. But was it sold according to law ? The statute directs, that " the officer shall advertise and post such

(*a*) In abridging this plea, the reporter has been careful to retain its language, in those allegations only, which appeared to be the subjects of controversy.

estate, with a particular account thereof, *on the sign-post in the society where taken,* to be *there* sold at public vendue," &c. *Stat.* 62. *tit.* 2. *s.* 74. (ed. 1838.) By the act of 1829, the officer is authorized to designate some *other* proper and convenient place within the society, for the sale of the property, where it "cannot be removed to the public sign-post, without great injury or expense, or which cannot be there sold, without great inconvenience or injury from exposure to the weather." *Stat.* 70. (ed. 1838.) Here are two predicaments, in which a sale at the public sign-post is dispensed with ; neither of which is shown, by the plea, to have existed in this case ; the plea averring only, that the goods " could not be conveniently removed."

Secondly, the rest of the property was not sold at all ; and as it was not produced, when demanded on the plaintiffs' execution, the officer is, of course, liable. He had simply a power to sell it, in the mode pointed out by law. Not having done so, the prior liens are removed, and that of the plaintiffs is not subject to any incumbrance. If the proper steps of the law are not taken, by the first attaching creditor, to apply the property attached in satisfaction of his debt, then it becomes exonerated from the attachment, and the whole becomes chargeable with the demand of the party subsequently attaching. *Cole* v. *Wooster,* 2 *Conn. R.* 203. 205. *Gates* v. *Bushnell,* 9 *Conn. R.* 535, 6. That an officer may lawfully deposit property which he has attached, with another for safe-keeping, is not denied ; but then he is answerable for his depositary. Nor is the payment of the value of the property and the application of the money to the debt of the first attaching creditor, equivalent to pursuing the steps of the law ; for the debtor, in such case, loses the benefit of *competition* at a public sale.

Thirdly, the second plea is not less defective than the first. It does not show, that the law has been complied with, or that the officer has any valid excuse.

2. That if no valid excuse for the negligence of the officer appears upon the record, the plaintiffs are entitled to a judgment in their favour *veredicto non obstante.* They state a good cause of action in their declaration ; to which there is no defence. The verdict does not help the defendants.

*Foster*, contra, contended, 1. That there could be no claim on the officer for that portion of the property, which was sold and applied on one of the executions in favour of *J. F. Pond & Co.* It is true, that the sale was not at the sign-post; but the verdict finds, that it would have been inconvenient to remove it thither; and it was not therefore necessary. *Stat.* 70. (ed. 1838.) The averment as to the circumstances of the sale, are sufficient to make it valid, after verdict. *Picket* v. *Allen*, 10 *Conn. R.* 146. *Backus* & al. v. *Danforth, Id.* 297. 306, 7.

2. That the officer is not liable for the property receipted by *Saunders*, who paid the *full value* of it, as soon as it was demanded, and the officer applied the money on the executions of *J. F. Pond & Co.*, leaving a large balance unpaid. There is nothing in this of which the plaintiffs can complain. They have suffered no loss. They had no claim on the property, until the prior liens were satisfied; and the property was not sufficient to satisfy them. *Commercial Bank* v. *Wilkins*, 9 *Greenl.* 28. They sue for damages which they have sustained, by the officer's negligence; and the jury have found in effect, that they have sustained no damage. The statute provision is, that "if any sheriff shall not duly execute and return the writ, he shall be liable to pay all *damages* to the party *aggrieved.*" *Stat.* 550. *tit.* 93. *s.* 7. The decisions in this state limit the officer's liability in the same manner. *Clark* v. *Smith*, 10 *Conn. R.* 1. 6. & seq. *Clark* v. *Smith*, 9 *Conn. R.* 379. *Fitch* v. *Smith, Id.* 43, 45, 6. In the case last cited, the court say, " it would be the most palpable injustice to give the plaintiff damage, when he has sustained none."

3. That as to the property receipted by *Mann*, the verdict finds, that it belonged to *Saunders*, and not to the debtor. This fact is a perfect answer to that portion of the claim. *Fuller* v. *Holden*, 4 *Mass. R.* 498. *Tyler* v. *Ulmer*, 12 *Mass. R.* 163. *Fitch* v. *Smith*, 9 *Conn. R.* 43. 46. *Jones* v. *Gilbert*, 13 *Conn. R.* 521.

STORRS, J. In this case, the plaintiffs move for judgment in their favour, notwithstanding the verdict.

The defendant is sheriff of the county of *Windham;* and this suit is brought for the default of one of his deputies, in not keeping certain personal property attached by him, in an ac-

tion brought by the plaintiffs against *Elisha A. Smith,* so that it could be taken on the execution issued on the judgment obtained therein ; and the question is, whether the facts alleged in either of the defendant's pleas in bar constitute a legal defence ; all of them being admitted by the replication, or found by the jury, on the plaintiffs' traverse.

The general principle applicable to this subject, is, that an officer, having taken property on legal process, must, in his subsequent proceedings with it, comply with all the requirements of the law, or show some legal excuse for not doing so ; and that if he does not, he becomes liable, not only to those on whose behalf he acts, but also to the owner, and those claiming under him and standing in his situation. The law being his only authority for his acts, when he departs from its provisions, he is of course without protection ; and if his acts are contrary to his duty, he cannot justify, even although they were for the advantage of those interested, unless they have consented to the course taken by him ; in which case, as to them, such consent would be a valid excuse to the officer. The inquiry, therefore, is, whether the defendant, in either of his pleas, shows, that the course required by law was taken by his deputy, in regard to the property in question ; or that he has been excused therefrom.

The first plea distinguishes between the several portions of the property, and sets up a different justification or excuse as to each. After stating, that prior to the attachment thereof, at the suit of the plaintiffs, it had all been attached, by the same deputy, in suits against said *Smith,* in favour of *J. F. Pond & Co.,* who obtained judgments therein, it alleges, that, as to a certain portion of said property, it had been sold and applied, by said deputy, on one of the executions which were issued on said judgments. All of the steps alleged to have been taken in regard to the property, before and at said sale, are admitted to be regular, excepting that it was advertised to be sold, and was sold, not at the sign-post in the society where the same was taken, but at another place where it was deposited when the execution was levied upon it ; and the only reason stated therefor in the plea, is, that *" it could not be conveniently removed"* from that place. The general statute on the subject of sales of property on execution, requires, that the officer shall advertise such property to be sold at the

sign-post in the society where it was taken, and that it shall be there sold. *Stat. p.* 62. The statute of 1829, however, provides, that " whenever an officer shall advertise for sale property taken on warrant or execution, which cannot be removed to the public sign-post, without great injury or expense, or which cannot be there sold, without great inconvenience or injury from exposure to the weather, such officer may, in his advertisement, designate some other proper and convenient place within the society where the property is taken, at which said property may be sold." *Stat. p.* 70.

The result to which we have come, as to the other parts of the case, makes it unnecessary to decide whether there is a sufficient reason shown for not selling this part of the property at the sign-post. The court however are strongly inclined to the opinion, that there is not; and that the plea should have shown, that the degree of necessity existed, mentioned in the last statute. If the court could, from the nature of the property, fairly infer such necessity, it might be sufficient. And perhaps a return of an officer on an execution not more particular than this averment in the plea, might be good. More explicitness, however, is required in pleadings.

Nor is this defect cured by the verdict, which has passed on this fact. We cannot intend, that a greater degree of necessity was proved, when proof of a smaller, or indeed of any degree, would equally warrant the finding of the jury.

This plea, as to the remainder of the property, alleges, that the officer, after having attached it in said suits in favour of *Pond & Co.,* delivered one portion of it to one *I. Saunders* to keep, taking from him his receipt therefor, and promise to re-deliver it to said officer, on demand; that said *Saunders,* although requested, neglected to re-deliver it, so that it might be sold on the executions in said suits, whereby he became liable to pay, and did afterwards pay, to said officer, the value of said property; and that the sum so paid was applied by said officer in part payment of said executions of *Pond & Co.;* and, as to the other portion of it, that it was delivered, by said officer, to one *W. B. Mann* to keep, taking from him a similar receipt and promise; but that, although requested, he neglected and refused to re-deliver it to said officer so that it might be sold on said executions, or to pay to said officer the value thereof; and that the value of said property, so deliver-

ed to said *Saunders* and *Mann* was less than the amount due on the judgments recovered by *Pond & Co.* in their said suits.

By the attachment of this property on the plaintiffs' writs, a lien was acquired, subject to those acquired by the said prior attachments; and it was the duty of the attaching officer to preserve that lien, so that it should not be lost, unless by an appropriation of the property in the manner prescribed by law, in satisfaction of the prior liens, or otherwise, without his default; and for that purpose to keep the property, so that such part of it as should not be so appropriated, could be taken on the executions issued on the judgment obtained by the plaintiffs on their said writ, or to show some legal excuse for not doing so. If, in the absence of such excuse, the property is not applied on the debt of the first attaching creditors, in the mode which the law prescribes, it was exonerated from their attachments, and became chargeable on the plaintiffs' execution. These principles were fully established in *Cole* v. *Wooster*, 2 *Conn. R.* 203.

In the present case, the lien on this property, created by the attachments of *Pond & Co.*, was confessedly discharged, in consequence of its not having been sold on their executions, in the manner directed by law; and the only question is, whether the facts set up excuse the attaching officer for not having the property so that it could be taken on the plaintiffs' execution.

It is quite clear, that the delivery of it to the receipter, however responsible he might be, and his neglect to re-deliver it to the officer according to the terms of his agreement, so that it might be applied on the plaintiffs' execution, does not constitute any such excuse. An officer, having attached property, may undoubtedly, if he sees fit, place it for safe-keeping in the hands of a bailee, taking from him a promise for its re-delivery, like that described in this plea, which may be enforced by the officer against such bailee. But the creditor, on whose behalf the attachment is made, is no party to such contract; he has no interest in it, nor is he affected by it. He looks solely to the officer, who is presumed to have the property in his custody, so long as the lien on it exists; and if any loss happens, in consequence of any arrangement between him and other persons respecting it, he assumes the

*Windham,*
*July, 1844.*

*Jordan*
*v.*
*Gallup.*

risk of answering to the creditor, if it is not forthcoming on his execution, unless it be lost by casualties which ought to excuse him ; which is not the case here. *Phillips* & al. v. *Bridge,* 11 *Mass. R.* 247. *Browning* v. *Hanford,* 5 *Hill's R.* 588.

The defendant, however, insists, that as it appears that the value of the property was insufficient to pay the claims on the attachments made prior to that of the plaintiffs, so that, if it had been disposed of according to law, nothing would have remained to be applied on their debt, they have lost nothing by the default of the officer, and therefore, cannot maintain this action ; and the case of *The Commercial Bank* v. *Wilkins,* 9 *Greenl. R.* 28. is cited in support of this claim. We do not think, that it was intended, in that case, to decide this point ; but if it were, it would not be sufficient to induce us to depart from principles, which have been long and well established in this state, and which are opposed to this claim of the defendant. If it were a new question, we think, that the law would be best vindicated, by holding officers liable for such official delinquency as is here complained of, leaving the amount of the recovery to be settled on such principles as are just and equitable. We think it a more wholesome course to make their liability depend on the question whether they have performed their duty, rather than on the inquiry whether a neglect of it has proved actually injurious to the party whose rights have been violated. It is also to be observed, that the law requires, that the property shall be applied on executions according to its value, as ascertained in a prescribed mode ; that the plaintiff, in a case like this, has a right to have its value so ascertained ; and that whether, if it had been. it would have produced more or less than the opinions of witnesses might prove it worth, is an inquiry necessarily attended with much uncertainty. In *Cole* v. *Wooster,* it was held. that a receipter of property attached, which was not afterwards taken on the execution in the suit, and disposed of in the manner prescribed by law, was liable as garnishee in a process of foreign attachment, at the suit of another creditor, although the property had been subsequently applied, by the procurement of such receipter, in payment of the first attaching creditor's debt. This decision went expressly on the ground, that the property was discharged from the lien crea-

ted by the first attachment, in consequence of the proper steps of the law not having been taken in applying it to the judgment rendered thereon; and that, therefore, the receipter was liable, although the jury found that no surplus remained of the property after discharging the debt for which it was attached.

The principles settled in that case clearly render the defendant liable in the present action.

The same doctrine prevails in *Massachusetts.* In *Rich &* al. v. *Bell*, 16 *Mass. R.* 294., which was a suit against an officer, for neglecting to keep goods attached by him, so that they might have been taken on the plaintiffs' execution, the action was sustained, notwithstanding the precise objection which we are now considering. There, the property had been previously attached, by other creditors; and by an agreement between such creditors and the officer, it had been, with the debtor's consent, sold and applied on the judgments subsequently obtained by such creditors; and the said goods were not worth, and would not produce on a sale thereof, a sum sufficient for the payment of the first attaching creditors, and of those of the second attaching creditors who were prior in order to the plaintiffs. It appeared also, that the sale was fairly conducted, and that a greater sum was produced than would have been, if the goods had been kept and sold on execution. Ch. J. *Parker*, in giving the opinion of the court, says: "The conduct of the officer, although for the advantage of the debtor, and of all the creditors who were eventually interested in the goods attached, was, nevertheless, contrary to his official duty; so that he is liable to the plaintiffs' action." "All the creditors who had attached, had a legal right to have the goods disposed of according to law; and to make any other disposition of them, was a wrong done to them, for which the law will give an adequate remedy." The same principle is also recognized in the state of *New-York.* *Vanwinkle* v. *Udall*, 1 *Hill's R.* 558. The first plea in this case, therefore, is insufficient.

The second plea alleges, that the property receipted by *Mann*, as before-mentioned, was, when the same was attached on the writs of *Pond & Co.* and the plaintiffs, the property of *I. Saunders*, and not of *Smith*, the defendants in said writs; and that the residue of said property attached has

been applied in payment of said executions of *Pond & Co.*; and that it was insufficient to pay said executions. This would be a good defence, as to the property receipted by *Mann. Fuller* v. *Holden,* 4 *Mass. R.* 499. *Tyler* v. *Ulmer,* 12 *Mass. R.* 163. 2 *N. Hamp. R.* 87. But as to the residue, it is not alleged in what manner it was applied; and on that account, we think that the plea is defective. This part of the plea would have been supported, by proof that the money received of the receipters was applied to those executions, which, on the grounds already stated in regard to the first plea, would be no defence against this action. Such facts should be stated as to show that the property was legally applied; which could only be done, by pursuing the course prescribed by the statute as to sales of property on executions.

The plaintiffs, therefore, notwithstanding the verdict, are entitled to judgment.

The defendant is not, however, necessarily liable to the plaintiffs for the whole value of the property attached; and we think that, on the facts admitted in the pleadings and found in this case, the recovery should be for nominal damages only. The general rule of damages, in a case like this, is the injury sustained by the creditor, by the default of the officer. As the value of the property attached in this case, was less than the amount for which it was holden on the writs which were served on it prior to the plaintiffs, it is obvious, that the plaintiffs would have received no benefit from the attachment of the property, if it had been retained by the officer in his possession, and proceeded with strictly according to law. They have, therefore, sustained no actual damage, by the negligence of which they complain. For their interest in the property nominal damages are a full compensation; and no circumstances are disclosed, which should enhance them beyond those actually sustained. Had that been the case, it would have stood on different grounds. According to the rule, that the defendant, in such a case as this, shall pay to the plaintiffs the full value of the property, an officer, who has attached property in favour of successive creditors, would be in a deplorable condition, since he would be held to answer to each, however numerous they might be, for its whole value; and that, even where there might be a mere venial departure from his official duty. We are aware of no

principle, which subjects an officer, in such a case, to consequences so harsh and unreasonable. In *Rich & al.* v. *Bill,* before referred to, which was substantially like the present, in respect to the circumstances affecting the question of damages, this point was made, and the court decided, that the plaintiff was entitled to nominal damages only. In *Clark* v. *Smith*, 10 *Conn. R.* 1. this court decided, that in an action against an officer for neglecting to return a writ of attachment, by him served on the goods of the debtor, the rule of damages is the injury actually sustained, by the default of the officer, and not the value of the property attached. We think that the same principle applies to this case.

*Windham,*
*July, 1844.*

Jordan
*v.*
Gallup.

The superior court, therefore, should be advised to render judgment in favour of the plaintiffs for nominal damages.

In this opinion the other Judges concurred.

Judgment for plaintiffs.